### GLENN, ASSIGNEE, v. ROSBOROUGH.

1. EVIDENCE—FRAUD—CORPORATION.—The fact that a board of corporators have not complied with the requirements of the general law in the formation of a corporation, cannot be shown by a stockholder except in cases of fraud.

2. FRAUD—CORPORATION—STOCKHOLDER.—Fraudulent concealment and representation by a corporator of the condition of the corporation, made with intent to deceive a subscriber, and the falsity of which he could not learn by ordinary diligence, will release such subscriber from his obligation.

3. CORPORATION—MISMANAGEMENT of the affairs of a bank after the formation of the corporation cannot affect the obligation of a subscriber to its capital stock.

Before WITHERSPOON, J., Chester, March, 1896. Affirmed.

Action by John Lyles Glenn and John J. Hemphill, assignees of the Bank of Chester, against William H. Rosborough, on two notes given for instalments on his subscription to the capital stock of the bank. Judgment for plaintiffs. Defendant appeals.

The following is so much of the Judge's charge as is necessary for a proper understanding of the questions:

Now, Mr. Foreman, if you conclude from the testimony that in the declaration in these preliminary steps filed with the secretary of State, there was any misrepresentation as

to what amount of stock was paid in of the capital stock, or in any other material matter, then if it was wilfully made to a party in interest for the purpose of deceiving him, then it would be a fraud. But if you conclude that there were erroneous statements in that declaration—merely erroneous statements—made with no intention to defraud or to injure any one, made under the honest conviction that they were true at the time, made under a misconception or misconstruction of this law, then I charge you that if such existed, that the defendant in this proceeding cannot be relieved of liability incurred by the signing of that note by him. And why do I say so? Because that would be an irregularity in proceeding to obtain a charter. Now, what is an irregularity? The statute here says: "In all charters heretofore or hereafter granted, no irregularity in complying with the provisions thereof"—that is, the provisions I have read to you above—"shall be held to vitiate said incorporation until a direct proceeding to set aside and annul said corporation is instituted by the proper authorities of the State; and all acts done and contracts entered into shall have the same force and effect as if said irregularity had not existed." Now, I charge you, that if the law required these prerequisites, and if any of them have been omitted, the observance of them, and if the omission was not intentional, it was merely a failure, if you so conclude, to conform to the provisions of the statute, it is a mere irregularity, and does not vitiate the charter, and would not relieve the defendant from liability. I charge you that if you conclude from the evidence, that if you find that the defendant, Rosborough, voluntarily participated in the organization of this bank in electing directors; if he received dividends from that bank after signing that note, intending thereby to take benefit if the bank succeeded, it doesn't lie in his mouth in a time of disaster to say that "I won't be bound by it." Now, I mean in the absence of fraud; understand me, fraud vitiates everything. He cannot, in order to invalidate this obligation, to relieve himself of his liability, he cannot be relieved of it,

if you conclude that the bank was badly managed in business matters, and that in consequence of mismanagement it failed. He couldn't avail himself of that; I mean any mismanagement subsequent to the signing of this note. In other words, I call your attention and direct your attention especially to the occasion upon which this defendant signed that note. Did McLure conceal anything from him? Did he deceive him? Did he intentionally commit any fraud upon him as president of the bank? Those are the very grounds upon which the defendant by his answer seeks to relieve himself of liability upon that note—concealment, deceit, and fraud practiced upon him by the officer of the bank—and that he acted upon that concealment by the officer of the bank, that deceit practiced by the officer of the bank, that fraud practiced by the officer of the bank; that he signed it under that influence, and wouldn't have signed it otherwise. Now, what does this concealment mean? It means withholding something that you know—keeping it back from a party interested—intentionally doing it to the prejudice of that party. Because, as to actual fraud, there can be no actual fraud except the intent prompts and accompanies the unlawful act. Now, what is deceit? If I charge you with deceiving, you must know or have reason to know that I haven't a knowledge of the matter that you communicate to me, and that you communicate it to me for the purpose of misleading me to my prejudice or to your advantage. Now, it is for you to say in this case whether there has been such deception, concealment or fraud practiced by any of these officers. On that ground and that ground alone can the defendant rest his defense and be relieved from his obligation. He must satisfy you from the evidence that some officer of this bank, McLure or some of the directors, or those authorized to act for the bank, made representations to him or concealed information from him that they had knowledge of to his prejudice, that he didn't know as to the truth or as to the condition of affairs to which the conversation related, and that he could not by

the exercise of ordinary care have found out whether the matters represented were true or false.

*Mr. S. P. Hamilton*, for appellant.

*Messrs. Glenn & McFadden*, contra, cite: *Irregularity in obtaining charter:* 5 Rich. L., 145. *Fraud not available against creditors:* 11 S. E. R., 610.

Feb. 10, 1897. The opinion of the Court was delivered by

MR. JUSTICE GARY. On the 21st of February, 1891, Wm. S. Gregg and others filed their declaration with the secretary of State, for the purpose of getting a certificate of incorporation to do a general banking business, under the name of the Bank of Chester, with a capital stock of $75,000, divided into 750 shares each of the par value of $100. On the 24th of February, 1891, the secretary of State commissioned Wm. S. Gregg, Richard H. Cousar, and Paul Hemphill, as a board of corporators, and thereby authorized and empowered them to open books of subscription to the capital stock of the company. On the 28th of February, 1891, the said board of corporators, in writing, certified to the secretary of State that they had opened the books of subscription, and that more than fifty per cent. of the capital stock had been subscribed, that they called a meeting of the subscribers, which was attended by a majority of them in value, whereupon they organized, by the election of the officers therein named. The board of corporators also certified that more than twenty per cent. of the capital subscribed had been paid to David Hemphill, cashier, and that payment of the balance of the capital stock was secured. Thereupon the secretary of State issued a certificate of incorporation, in accordance with the said declaration.

About the      day of February, 1891, the defendant subscribed for twenty shares of the capital stock of said bank, and on the 11th of June, 1891, executed his promissory note, whereby he promised to pay on demand to the Bank

of Chester $400, for value received, with interest at the rate of eight per cent. per annum, from 1st March, 1891, until paid in full, the same being twenty per cent. on first instalment on his subscription for twenty shares of capital stock of said Bank of Chester. At the same time, he also executed a note for $600, with interest at six per cent. per annum, being the second instalment of thirty per cent. on his subscription aforesaid. The Bank of Chester made an assignment for the benefit of its creditors on the 12th of March, 1894, whereby plaintiffs were appointed assignees.

This action was commenced on the 10th of February, 1896, upon said promissory notes.

The defendant, in his answer, alleged that the notes were given for two instalments on twenty shares of the capital stock of said bank, with the understanding that a certificate for twenty shares of the capital stock should be placed in said bank, to secure the payment of said notes, but that said bank failed and refused to· issue said certificate, and place it in said bank, as collateral security for the payment of said notes, and that the said notes were without consideration, and void. The defendant also alleged that he was induced to sign the said notes by the concealment, misrepresentation, and fraud of the officers of said bank, who had acted as his agents in the transaction, and that he refused to pay the said notes when demanded of him after the assignment of the bank, because the board of directors had permitted such fraudulent transactions to be practiced in connection with its affairs, that it was wrecked by their mismanagement and fraud, and that he is not liable in this action.

His Honor, Judge Witherspoon, refused to allow testimony offered in behalf of the defendant, for the purpose of showing that the statements set forth in the certificate aforesaid to the secretary of State by the board of corporators, were not true. The presiding Judge charged the jury that if the defendant was induced to subscribe to said capital stock by actual fraud, concealment, or intentional misrep-

resentation on the part of those managing the affairs of the bank, then the defendant was not liable upon said notes. He also charged that mismanagement of the affairs of the bank, subsequent to the execution of the notes, would not relieve the defendant from liability.    The jury rendered a verdict in favor of the plaintiffs.

In considering the exceptions herein, it should be remembered that the creditors of the bank are represented by the assignees in this action.

We will first consider whether there was error on the part of the Circuit Judge in excluding testimony offered in behalf of the defendant, to show that the statement contained in the certificate signed by the board of corporators was untrue.  When objection was made to the introduction of said testimony, the defendant's attorney, in answer to an inquiry on the part of the presiding Judge, stated that the object was to show that the corporators had not complied with the law, whereupon his Honor excluded the testimony, under section 1519 of the Rev. Stat. Afterwards, when objection was interposed to the introduction of similar testimony, the defendant's attorneys called the attention of the Court to the fact that defendant's answer alleged fraud, deceit, and concealment.    After further remarks were made by the respective counsel upon this point, the presiding Judge said: "Whilst I hold, under section 1519, he cannot go behind the charter granted by the State to the bank, to show any irregularity of those corporators, yet if he wishes to show that the defendant was induced to sign the note through a fraudulent representation or fraudulent conduct of any one who could bind the bank corporation, he can do so."  Even if there was fraud on the part of the board of corporators in certifying false statements to the secretary of State, the defendant would not be relieved of liability on the *notes*, unless he was induced to sign them through fraudulent conduct of those having authority to bind the bank.  If the defendant, before the execution of the notes, had knowledge that the board of corporators had

certified false statements to the secretary of State, and he was induced to subscribe to the capital stock through fraudulent misrepresentations and concealment, it was his duty to have resisted payment of his subscription, and not to have given the notes in payment thereof. The ruling of the Circuit Judge did not prevent the defendant from showing that he was induced to sign the notes by fraudulent representations and concealment, and if he was not so induced he cannot escape liability. The exceptions raising this question are, therefore, overruled.

The charge of his Honor upon the question of fraudulent representations and concealment was certainly as favorable to the defendant as he had a right to expect, for it eliminated from the consideration of the jury the conduct of the defendant subsequent to the execution of the notes, in attending the meetings of the stockholders, his payment of the interest on said notes until the year 1894, the receipt of dividends on ten shares of the capital stock, and having the dividends credited on said notes, from which facts the jury might have inferred *waiver* to insist upon such defense. The transaction with the bank, when the notes were executed, made the defendant a stockholder, although the certificate of stock was not delivered. *Kerchner* v. *Gettys*, 18 S. C., 521.

The only other question raised by the exceptions is, whether the mismanagement of the affairs of the bank subsequent to the execution of the notes, could be pleaded as a defense in this action. This Court is entirely satisfied with the ruling of his Honor, that it is not a good defense.

To allow the defendant to set up this defense, would enable him to take advantage of his own wrong, as a stockholder, in suffering the affairs of the bank to be mismanaged. The other exceptions are also overruled.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.